IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

SHELLEY M.,                        )
                                   )
            Plaintiff,             )
                                   )
    v.                             )    1:22CV641
                                   )
KILOLO KIJAKAZI,                   )
Acting Commissioner of Social Security, )
                                   )
            Defendant.             )

MEMORANDUM ORDER AND OPINION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Shelley M. ("Plaintiff") brought this action pursuant to Section 205(g) of the Social Security Act (the "Act"), as amended (42 U.S.C. § 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claim for Disability Insurance Benefits ("DIB") under Title II of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.  PROCEDURAL HISTORY

Plaintiff protectively filed her application for DIB on December 6, 2013, alleging a disability onset date of November 1, 2013. (Tr. at 134, 366-68.)[1] Her application was denied initially (Tr. at 89-108) and upon reconsideration (Tr. at 109-30, 168-75). Thereafter, she requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at. 176-78.) On May 17, 2017, Plaintiff, along with her attorney, attended the subsequent video hearing, at which both Plaintiff and an impartial vocational expert testified. (Tr. at 134.)

---

[1] Transcript citations refer to the Sealed Administrative Record [Doc. #7].

Following this hearing, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act. (Tr. at 146.) However, on September 11, 2019, the Appeals Council remanded the case for further proceedings. (Tr. at 152-54.) Accordingly, on February 22, 2022, Plaintiff and her attorney attended a second administrative hearing by telephone. (Tr. at 13.) In his decision dated March 14, 2022, the ALJ again concluded that Plaintiff was not disabled under the Act (Tr. at 25), and on June 7, 2022, the Appeals Council denied Plaintiff's request for review of the decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 2-7).

II. LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal brackets and quotation omitted).

"Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (internal quotation omitted). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal brackets and quotation omitted). "If there is evidence to justify a refusal to direct a

verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472 (internal brackets and quotation omitted). "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2]

---

[2] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 *et seq.*, provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 *et seq.*, provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1.

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, the claimant is disabled. Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

4

that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite the claimant's impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" between her alleged onset date, November 1, 2013, and her date last insured, December 31, 2018. The ALJ therefore concluded that Plaintiff met her burden at step one of the sequential evaluation process. (Tr. at 16.) At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments:

> lumbar spine degenerative disc disease, osteoarthritis, depression, and anxiety[.]

(Tr. at 16.) The ALJ found at step three that none of the impairments identified at step two, individually or in combination, met or equaled a disability listing. (Tr. at 16-18.) He therefore assessed Plaintiff's RFC and determined that she could perform sedentary work with the following, non-exertional limitations:

> [she] is limited to a sit/stand option every ½ hour while remaining on task; occasional climbing of ramps and stairs; no climbing of ladders, ropes, or

scaffolds; occasionally balancing, stooping, kneeling, crouching; no crawling; no more than occasional exposure to cold and hazards; unskilled work of a routine repetitive nature (meaning a reasoning level of 1-2) in 2-hour segments; public contact incidental to work; occasional contact with supervisors and coworkers; no teamwork for task completion; and no requirements of conflict resolution or crisis management.

(Tr. at 18.) Based on this determination and the testimony of a vocational expert, the ALJ determined at step four of the analysis that all of Plaintiff's past relevant work exceeded her RFC. (Tr. at 23.) However, the ALJ found at step five that, given Plaintiff's age, education, work experience, RFC, and the testimony of the vocational expert as to these factors, she could perform other jobs available in significant numbers in the national economy. (Tr. at 23-25.) Therefore, the ALJ concluded that Plaintiff was not disabled under the Act. (Tr. at 25.)

Plaintiff now raises two challenges to the ALJ's decision. First, she contends that the ALJ "failed to identify and obtain a reasonable explanation for the apparent conflict between the testimony of the Vocational Expert ('VE') and the Dictionary of Occupational Titles ('DOT')." Second, she argues that the ALJ "erred by failing to resolve the material inconsistency between his evaluation of the opinion evidence and his [RFC] assessment." (Pl.'s Br. [Doc. #13] at 1.) After a thorough review of the record, the Court finds that neither of Plaintiff's arguments require remand.

A. DOT Conflict

As noted above, Plaintiff first challenges the ALJ's reliance on the VE's testimony at step five of the sequential analysis. Specifically, Plaintiff contends that the VE's testimony conflicted with the DOT, but that the ALJ failed to obtain a reasonable explanation for the conflict. In Pearson v. Colvin, 810 F.3d 204 (4th Cir. 2015), the Fourth Circuit clarified the steps an ALJ must take to identify and resolve apparent conflicts between a vocational expert's

6

testimony and the DOT. Specifically, the Fourth Circuit held that, if an expert's testimony apparently conflicts with the DOT, the expert's testimony can only provide substantial evidence to support the ALJ's decision if the ALJ received an explanation from the expert explaining the conflict and determined both (1) that the explanation was reasonable and (2) that it provided a basis for relying on the expert's testimony rather than the DOT. Pearson, 810 F.3d at 209-10; see also Rholetter v. Colvin, 639 F. App'x 935, 938 (4th Cir. 2016).

In the instant case, Plaintiff contends that the vocational testimony on which the ALJ relied at step five of the sequential analysis conflicted with the DOT as to all of the identified jobs. Specifically, the ALJ identified three representative jobs available in the national economy that Plaintiff could perform: Final Assembler (DOT 739.687-010), Semiconductor Bonder (DOT 726.685-066), and Stringing-Machine Tender (DOT 689.585-018). (Tr. at 24, 56.) Defendant concedes that the job of Final Assembler is performed at the light exertional level, rather than at the sedentary level set out in Plaintiff's RFC assessment. (Def.'s Br. [Doc. #14] at 15.) As such, an unresolved apparent conflict exists between this position and the RFC. However, Defendant contends that no apparent conflicts prevent Plaintiff's performance of the remaining two jobs.[4] The Court agrees.

---

[4] The administrative decision at Step Five includes a chart that lists all three of the jobs in question as involving "light" work. (See Tr. at 24.) This appears to be a scrivener's error, as the DOT clearly defines the jobs of Semiconductor Bonder and Stringing-Machine Tender as sedentary work, and at the hearing the ALJ solicited testimony from the VE regarding sedentary positions and the VE identified those positions as sedentary. (Tr. at 56.) In addition, the substance of the discussion at Step Five contemplated sedentary positions, consistent with the RFC, noting that if Plaintiff "had the residual functional capacity to perform the full range of sedentary work, a finding of 'not disabled' would be directed by Medical-Vocational Rule 201.28 and 201.21," and then identifying the positions as those identified by the VE that would still be available even with the additional limitations in the RFC. (Tr. at 24.)

Case 1:22-cv-00641-JEP   Document 16   Filed 09/26/23   Page 7 of 13

With regard to the positions of Semiconductor Bonder and Stringing-Machine Tender, Plaintiff takes issue with the RFC's inclusion of "a sit/stand option every ½ hour while remaining on task." (Tr. at 18.) In particular, Plaintiff argues that this limitation would result in standing for an amount of time in excess of what constitutes sedentary work because she would be required to stand for half an hour and then sit for half an hour, ultimately resulting in sitting for 4 hours and standing for 4 hours in an 8-hour day. (Pl.'s Br. at 5.) As Plaintiff notes, the regulations define sedentary work as involving standing and walking for up to 2 hours per 8-hour workday, with the remaining time spent sitting.

However, contrary to Plaintiff's contentions, the RFC in this case does not include a requirement that Plaintiff must stand for half an hour before returning to a seated position for half an hour. Instead, the RFC includes a "sit/stand option" that would allow Plaintiff the <u>option</u> to change position from sitting to standing and from standing to sitting at 30-minute intervals, and the VE testified that that the positions of Semiconductor Bonder and Stringing Machine Tender could accommodate that option. Indeed, the VE specifically testified that the jobs of Semiconductor Bonder and Stringing-Machine Tender allow for sitting and standing "at will." (Tr. at 57.) In other words, the VE explained that an individual with Plaintiff's RFC could perform these jobs while alternating between sitting and standing, as needed, throughout the day. Thus, the VE in this case clearly identified the sit/stand requirement for the positions in question as "sit/stand at will" and Plaintiff fails to show that this testimony resulted in any apparent conflict with the DOT or with the sedentary requirements of Plaintiff's RFC.

It may be that Plaintiff is intending to assert a *per se* conflict between the VE and the DOT for a claimant limited to sedentary work but with a sit/stand option that would allow for standing of more than two hours. However, federal district courts in North Carolina have not found an apparent conflict for claimants limited to light work with a sit/stand option, and the same analysis would apply here. See Conway v. Saul, No. 1:18CV483, 2019 WL 4102184 at *6 (M.D.N.C. Aug. 29, 2019); Baxley v. Berryhill, No. 1:17CV1048, 2018 WL 5817377 at *6 (M.D.N.C. Nov. 5, 2018) (collecting cases); see also Walls v. Barhnart, 296 F.3d 287, 291-92 (4th Cir. 2002) (noting that a sit/stand option negatively impacts the number of unskilled light and sedentary jobs available, as recognized in SSR 83-12, but finding no contradiction with SSR 83-12 where the vocational expert identified unskilled sedentary positions with a sit/stand option). Plaintiff was limited to less than the full range of sedentary work, specifically to positions with a sit/stand option as well as the additional limitations set out in the RFC, and the VE identified positions that she could perform even with the additional limitations. See Hyatt v. Apfel, 153 F.3d 720, 1998 WL 480722, at *3-4 (4th Cir. 1998) (finding substantial evidence to support Commissioner's decision where "the ALJ consulted a VE, who identified some unskilled sedentary jobs where the worker could alternate between sitting and standing").

Moreover, even if an apparent conflict did exist, the VE and the ALJ in this case specifically considered and addressed the issue. During the hearing, the ALJ identified areas not covered by the DOT, including "sit/stand options in various forms," and the ALJ asked the VE on what his testimony was based as to those issues. (Tr. at 58-59.) The VE then explained that he based his testimony as to those elements "on [his own] research, education, training, and work experience." (Tr. at 59.) Based on that testimony, the ALJ explained in

9

his decision that "[t]he vocational expert testified that where the DOT does not address aspects of the claimant's residual functional capacity with respect to occupations, their professional expertise indicates that the above listed occupations are available for someone with the residual functional capacity of the claimant." (Tr. at 24.) Thus, to the extent Plaintiff is attempting to raise a conflict or inconsistency as part of this claim, that issue was sufficiently addressed by the VE and the ALJ in any event and would not provide a basis for remand here.

    B.    Opinion Evidence

In her second argument, Plaintiff contends that the ALJ should have included in the RFC all of the limitations contained in the Functional Capacity Evaluation ("FCE") provided by physical therapist Adrian Jessen. (Pl.'s Br. at 9-11.) For claims, like Plaintiff's, that were filed before March 27, 2017, ALJs evaluate the medical opinion evidence in accordance with 20 C.F.R. § 404.1527(c). Brown v. Comm'r Soc. Sec. Admin., 873 F.3d 251, 255 (4th Cir. 2017). "Medical opinions" are "statements from acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [her] symptoms, diagnosis and prognosis, what [she] can still do despite impairment(s), and [her] physical or mental restrictions." Id. (quoting 20 C.F.R. § 404.1527(a)(1)). The regulations mandate that the ALJ evaluate each medical opinion presented to him, and generally "more weight is given 'to the medical opinion of a source who has examined [the claimant] than to the medical opinion of a medical source who has not examined [her].'" Id. (quoting 20 C.F.R. § 404.1527(c)(1)).

In the present case, Mr. Jessen performed Plaintiff's FCE to determine whether she could perform the demands of her previous work as an Income Maintenance Caseworker.

(Tr. at 22, 670.) The ALJ determined that Mr. Jessen's opinion that Plaintiff could perform sedentary work was consistent with the objective and clinical evidence in the record and accorded it "significant" weight. (Tr. at 22.) Specifically, the ALJ found that:

> The medical opinions of the claimant's physical therapist are accorded significant weight. They opined [that Plaintiff] could occasionally walk, bend, and stoop, had the ability to lift 10 pounds frequent and 20 occasionally, and opined [that Plaintiff's] issues was not "too super bad." It was also noted that [Plaintiff] did not achieve heavy or maximum effort with her lifting attempts, suggesting [that Plaintiff] would possibly be capable of more than she presented on examination. These medical opinions were given less than a month prior to [Plaintiff's] alleged onset date, and are consistent with objective and clinical observations in the record.

(Tr. at 22) (internal citations omitted).

Plaintiff argues that the ALJ erred because he gave Mr. Jessen's opinion "significant weight" but did not adopt Mr. Jessen's opinion that Plaintiff could perform no more than occasional sitting. However, Mr. Jessen specifically found that Plaintiff could perform at "US Department of Labor Physical Demand Level: Sedentary." (Tr. at 670.) The ALJ gave significant weight to the opinion and adopted the limitation to positions at the sedentary level. (Tr. at 22, 24.) Mr. Jessen's opinion also includes a chart noting that Plaintiff's past work required "[s]itting for extended periods of time," and as to that requirement Mr. Jessen described Plaintiff's abilities as limited to "Sitting Occasionally." (Tr. at 670.) Notably, to the extent that Mr. Jessen found that Plaintiff was limited with respect to sitting for extended periods of time, the ALJ likewise acknowledged that Plaintiff experienced discomfort "when remaining in the same position for too long" (Tr. at 20), and that limitation is addressed in the ALJ's inclusion of the sit/stand option. Indeed, as noted above, all of the jobs identified by the ALJ at step five of the sequential analysis allow Plaintiff to alternate between sitting and

11

standing at will. Thus, nothing in the RFC requires Plaintiff to sit for extended periods, and the Court finds no conflict between Mr. Jessen's opinion and the RFC in this case.

Moreover, even if Mr. Jessen's FCE could be read, as Plaintiff contends, as an opinion that Plaintiff should be limited to sitting only occasionally, this opinion would not create a material conflict with the ALJ's ultimate determination, given the inclusion of the sit/stand option and given that all of the jobs identified by the ALJ allow Plaintiff to alternate between sitting and standing at will. Plaintiff contends that "Mr. Jessen's opinion would seem to conflict with the ALJ's finding that [Plaintiff] can perform sedentary work in a seated posture for exactly one-half of the workday." (Pl.'s Br. at 9-10.) However, as noted above, the ALJ did not require Plaintiff to sit for 4 hours and stand for 4 hours; the ALJ instead included in the RFC a "sit/stand option" giving Plaintiff the option to change positions every 30 minutes. As discussed above, the VE specifically testified that the jobs of Semiconductor Bonder and Stringing-Machine Tender allow for sitting and standing "at will," such that an individual with Plaintiff's RFC could perform these jobs while alternating between sitting and standing, as needed, throughout the day. (Tr. at 56-57.) In the circumstances, it does not appear that there is a material inconsistency between Mr. Jessen's opinion and the ALJ's ultimate determination that the ALJ failed to address or that would require remand.

12

IT IS THEREFORE ORDERED that the Commissioner's decision finding no disability is AFFIRMED, that Plaintiff's Motion for Judgment Reversing the Commissioner [Doc. #12] is DENIED, that Defendant's Motion for Judgment on the Pleadings [Doc. #14] is GRANTED, and that this action is DISMISSED with prejudice.

This, the 26th day of September, 2023.

/s/ Joi Elizabeth Peake
United States Magistrate Judge